IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KEVIN TARQUINIO, *et al.*, ) | CASE NO. 1:11 CV 325 |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | JUDGE DONALD C. NUGENT |
| ) | |
| CITY OF LAKEWOOD, OHIO, *et al.*, ) | |
| ) | |
| Defendants. ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |

This matter comes before the Court upon Plaintiffs' Motion for Declaratory Judgment. (ECF # 19). Defendants, City of Lakewood and individually named employees of the City of Lakewood Animal Control, filed a joint brief in Opposition to Plaintiffs' motion. (ECF # 24). Plaintiffs filed a Reply in support of their motion, along with supporting affidavits from each plaintiff and their counsel. (ECF #29). Having reviewed all of the relevant evidence and arguments presented by the parties, and for the reasons stated below, Plaintiffs' Motion for Declaratory Judgment is DENIED.

## I. BACKGROUND[1]

Kevin and Nicole Tarquinio reside in Lakewood. Plaintiffs are the owners of two dogs who have been designated by Lakewood Animal Control Officers to be animals with the predominant characteristics of "pit bulls." Lakewood City Ordinance ("LCO") 506.01 provides that no person shall "keep, harbor or own any dangerous or vicious animal within the City of Lakewood." Ordinance 506.03 defines dangerous or vicious animals and provides that "all pit bull dogs . . . are deemed to be dangerous animals. . . ." In turn, a "pit bull dog" is defined as a "Staffordshire Bull Terrier, American Pit Bull Terrier or American Staffordshire Terrier breed of dog, any dog of mixed breed which has the appearance and characteristics of being predominantly of such breeds, any dog commonly known as a pit bull, pit bull dog or pit bull terrier; or a combination of any of these breeds." LCO 506.03. Exceptions are made for animals that were already kept by their current owners in the City of Lakewood at the time the ordinance was enacted. The Tarquinio's obtained their dogs after the enactment of the ordinance, and therefore, the exceptions do not apply in their circumstances.

In November of 2010, the City advised the Tarquinio's that their dogs would be considered pit bulls for the purpose of enforcing LCO 506.03. There is a dispute as to whether they were informed that they could challenge this designation through a hearing, however, the Complaint indicates that a letter dated November 9, 2010 informed the Taraquinios that they could challenge the classification by providing DNA evidence that showed the animals do not have the predominant characteristics of pit bull dogs. They were informed that they had to provide

---

[1] The factual summary is based upon undisputed facts provided by the parties.

evidence challenging the designation or remove the dogs from the City by December 7, 2010. On December 1, the Taraquinios requested an extension of time to remove their dogs from the City. That request was denied, but the Taraquinios were informed in writing that they could challenge the "pit bull" designation through a hearing pursuant to LCO 506.03(d), and that a request for hearing would stay any order of the Animal Control Officer "during the time in which the hearing and decision of the Director of Public Safety or his designee is pending."

Defendants did not request a hearing prior to the December 7, 2010 deadline, and did not remove the dogs from the City. On January 10, 2011, the Taraquinios belatedly requested a hearing. Despite the untimeliness of the request, the City scheduled a hearing for February 17, 2011, thereby staying the order of the Animal Control Officer. Plaintiffs were provided with information regarding the City's witnesses and copies of documents. On February 15, 2011, Plaintiffs filed this lawsuit indicating that they would not provide DNA test results on their dogs. The hearing, therefore, was never conducted. Subsequent to the filing of the lawsuit, the City agreed to suspend enforcement until the end of September 2011.

## II. DISCUSSION

The motion currently pending before the Court addresses only the Complaint's request for declaratory judgment seeking to have LCO 506 declared unconstitutional under the Ohio Constitution for violation of the Home Rule provisions in Article XVIII, Section 3. Plaintiffs have challenged several provisions of the LCO which do not apply to their circumstances. Specifically Sections 506.04(b)(1); 506.04(b)(1); and 506.04(b). Plaintiff has alleged no injury that has occurred or is likely to occur under these three provisions. These sections address

requirements for owners of dangerous or vicious animals that were kept in Lakewood prior to July 21, 2008 and were registered within 90 days of the effective date of the ordinance. There is no dispute that Plaintiffs obtained their dogs well after July 21, 2008. Therefore, these provisions have no application to Plaintiffs, and were, in fact, never enforced or threatened to be enforced against Plaintiffs. Counts Two, Three and Four, which challenge those sections of the ordinance are, therefore, dismissed for lack of standing.[2]

The remaining claims alleging a violation of the Home Rule provisions of the Ohio Constitution are Claims One and Five. Article XVIII, §3 of the Ohio Constitution provides that "Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." There is no dispute that the City of Lakewood's dangerous and vicious animal ordinance is regulation that is within its authority to adopt and enforce as a legitimate exercise of it police power. That right, however is limited when and if it conflicts with a general law of Ohio. The parties do not contest that O.R.C. §955.22 is a general law of the state of Ohio. However, Plaintiffs contend that LCO 506 conflicts with the provisions of Ohio Revised

---

2

Defendants also argue that Plaintiffs claims are not ripe, because they did not attend the requested hearing, and, therefore, they have not obtained final state action. The Taraquinios, however, did receive an order to remove their dogs and were informed of the Animal Control Officers decision designating the animals as dangerous or vicious under the ordinance. As the hearing was discretionary under the statute and was available only at the request of the accused, and as the Taraquinios have been threatened with criminal action if they do not comply with the order, the Court will not dismiss the claims on the basis of ripeness, at this time. The Court however, is not making a definitive ruling on the ripeness of the claim for purposes of federal constitutional challenges to the statute, nor should this be construed as a comment one way or the other on the sufficiency of the hearing procedures and processes as provided in the local ordinance.

Code §955.22, and the Defendants claim that LCO 506 permissibly expands the regulations contained in O.R.C. §955.22 without conflicting with those provisions.

A conflict arises when the "ordinance permits or licenses that which the statute forbids and prohibits, and vice versa." *Struthers v. Sokol* (1923), 108 Ohio St. 263, syllabus at ¶2. The state statute sets forth limitations and obligations that must be undertaken by any person who owns or houses a vicious dog, which under the statute includes all pit bulls, including restrictions on how the dog must be contained, leashed, and handled. The state statute does not explicitly permit pit bulls, or any dogs for that matter, to be owned or housed by every state resident. Therefore the ordinance banning pit bulls dogs from Lakewood does not prohibit anything that the state law explicitly permits.

Plaintiffs cite cases in which the Ohio Supreme Court has found a conflict-by-implication, alleging that the ordinance "indirectly prohibit[s] what a state statute permits or vice versa." *Mendenhall v. Akron*, 117 Ohio St.3d 33; *see also, Am. Fin. Servs. Assn. v. Cleveland* (2006). In this case, Plaintiffs argue that because the state statute provides safety measures that must be taken by owners of pit bulls, it indirectly permits pit bulls and they, therefore, cannot be banned by a municipal ordinance.

Under the Ohio Supreme Court's reasoning in *City of Cincinnati v. Baskin*, 112 Ohio St.3d 279, 859 N.E.2d 514 (2006), this reasoning must fail, however. LCO is not in conflict with the state statute because the state statute doe not directly or indirectly permit or authorize the ownership of pit bull dogs, it only requires that under no circumstances shall a pit bull be kept or housed in Ohio without the implementation of extra safety measures required for vicious dogs. See, Id. As with the statute involved in the Cincinnati case, and in contrast to many of the cases

cited by Plaintiff,[3] there is nothing in O.R.C. §955.22 that "manifests an intent to prevent municipalities from regulating" the overall legality of owning pit bull dogs. *Id.* at 284. As stated by the Ohio Supreme Court in that case, "in the absence of any limiting provision or declaration to the contrary, we conclude that the General Assembly intended to allow municipalities to regulate" the issue, in this case the possession of pit bull dogs within each individual municipality. *Id.* Count One, is, therefore, dismissed.

Plaintiffs further argue that the Lakewood Ordinance improperly conflicts with the state statute in its definition of a "pit bull dog." O.R.C. §955.11 includes a dog that "[b]elongs to a breed that is commonly known as a pit bull dog" as a vicious dog under the statute. There are, however, other ways a dog may be designated as vicious, and the statute in no way precludes other breeds of dogs from being deemed dangerous or vicious either based on their actions or their predominate characteristics. LCO 506.03 defines a "pit bull dog" as any dog commonly known as pit bull, pit bull dog, or pit bull terrier," which is further defined as "any dog of mixed breed which has the appearance and characteristics of being predominately of such breeds." Plaintiffs contend that because the state statute includes dogs that "belong to a BREED commonly known as pit bull" but the LCO includes "ANY DOG commonly known as pit bull," the LCO "grossly expands the definition of a pit bull" and conflicts with the state statute.[4] (Emphasis added). This argument

---

[3]

The Ohio Supreme Court in *Cincinnati v. Baskin*, 112 Ohio St.3d 279, 283, 859 N.E. 2d 514, 519 (2006), distinguished *Am Fin. Servs. Assn. v. . Cleveland*, 112 Ohio St.3d 170, 858 N.E.2d 776 (2006), acknowledging that a conflict was found, but that the conflict was created because Cleveland undertook to "regulate the making of a loan authorized by the General Assembly." There is no indication that the General Assembly enacted O.R.C. §955.22, as a means of authorizing the housing or ownership of pit bull dogs state-wide.

[4]

Plaintiffs do not appear to argue that the use of the phrases "pit bull," "pit bull dog," or

-6-

defies common sense. Every individual dog is of a breed, whether purebred or mixed; and, if the dog is commonly known as pit bull, it is because it belongs to a breed, whether purebred or mixed, that is commonly known as pit bull. The language, in all practicality, has the same effect.

"It is firmly established that legislative enactments, whether of a municipality or state, have a strong presumption of constitutionality. Further, it is noted that "when it is possible . . . to harmonize the general law and municipal ordinances, the same should be done." *N. Ohio Patrolmen's Benev. Assn v. City of Parma*, 61 Ohio St.2d 375, 377 (1980). In this case, it is not only possible to harmonize the general law and the municipal ordinance in question, but is nearly impossible to find conflict between them as the Ohio Supreme Court has interpreted the meaning of the general law to be nearly identical to the language utilized in the municipal ordinance.

Further, even if the LCO language did actually expand the scope of the definition, the expansion would not be in conflict with the state statute. The state statute does not limit the designation of dangerous of vicious dogs to a particular breed or type of dog, nor to any one particular behavior. Therefore, the LCO does not prohibit something that the state statute explicitly or implicitly allows. In fact, the Ohio Supreme Court has already ruled that the state statute includes not only pure bred pit bull breeds but any "dogs commonly known as pit bulls" which "possess unique and readily identifiable physical and behavioral traits which are capable of recognition both by dog owners of ordinary intelligence and by enforcement personnel." *State v. Anderson*, 57 Ohio St.3d 168, at syllabus (1991). The Court held that this applies equally to mixed

---

"pit bull terrier" impermissibly expands what is "commonly known as a pit bull" under the state statute.

breeds and that "the formal breed name which has been assigned to the dog is not relevant." *Id* at 174-75.  In essence, the Ohio Supreme Court has specifically interpreted the state statute to mean exactly what LCO more explicitly states: that pit bulls, for purposes of the statute, include any dogs that exhibit physical and behavioral characteristics generally conforming to the standards normally associated with pit bulls. *Id*.  The state statute applies not to "one particular breed, but encompasses several breeds or a cross-section thereof." *State v Robinson*, 44 Ohio App. 3d 128, 133 (1998).

Further, the state statute does not attempt to regulate dogs that do not fit under the state pit bull definition in any way.  Therefore, if the municipal ordinance did indeed regulate types of dogs not addressed in any way by the state statute, the ordinance cannot be in conflict with the state statute.  The definition of pit bull dog, and/or the definition of dangerous or vicious dog contained in LCO 506.03, therefore, is not in conflict with O.R.C. §955.11, and does not violate the Home Rule provisions of the Ohio Constitution.  Count Five must, therefore, be dismissed.

### III. CONCLUSION

Based upon the foregoing, Plaintiff's Motion for Declaratory Judgment that LCO 506 violates the Home Rule authority awarded by Article XVIII, § 3 of the Ohio Constitution(ECF # 19) is DENIED.  Counts One through Five of the Complaint are dismissed with prejudice.

IT IS SO ORDERED.

*/s/ Donald C. Nugent*
DONALD C. NUGENT
United States District Judge

DATE: *September 23, 2011*